**SO ORDERED.**

**SIGNED this 27 day of January, 2012.**

_____
**J. Rich Leonard
United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

SMITHVILLE CROSSING, LLC,                    CASE NO. 11-02573-8-JRL
                                             CHAPTER 11
    DEBTOR.

_____

**ORDER**

This matter came before the court on the debtor's motion to hold an emergency status conference. A hearing was held on January 26, 2012 in Raleigh, North Carolina.

The debtor filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on April 1, 2011. On September 28, 2011, the debtor filed its amended chapter 11 plan and disclosure statement. The debtor filed an amendment to the chapter 11 plan on December 9, 2011. In order to fund its plan, the debtor sought to use Rialto Real Estate Fund, LP's ("Rialto") cash collateral, consisting entirely of the debtor's rental income. In a previous order dated September 28, 2011, the court held that the debtor could not use Rialto's cash collateral to fund its chapter 11 plan unless the debtor provided Rialto with adequate protection. The plan stated that Glenn and Tanina Richardson, the debtor's sole equity owners ("old equity owners"), would pledge a lien on their unencumbered real property in Lumberton, North Carolina to Rialto as

adequate protection. At the confirmation hearing, the court found that this lien would adequately protect Rialto's interest in the debtor's use of Rialto's cash collateral. The court also found that this lien made the debtor's plan feasible.

At the confirmation hearing, Mr. Richardson testified that the lien would only be available if the old equity owners were able to keep their equity interests in the debtor. However, this condition was not stated in the plan. The debtor's plan explicitly proposed to extinguish the existing membership interests in the debtor as of the effective date of the plan. In addition, the plan stated that the old equity owners proposed to pay $10,000.00 to purchase ownership interests in the debtor and invited any party desiring to place a competing bid to do so at the confirmation hearing.

On January 20, 2012, the court confirmed the debtor's chapter 11 plan in open court. An equity auction was subsequently held and the highest bidder at the auction was not the old equity owners or Rialto, but a Rialto subsidiary.[1] The parties were then instructed to confer and inform the court on how they wished to proceed. They were unable to reach an agreement and requested the court hold this emergency status conference.

## DISCUSSION

The debtor's proposal to hold an equity auction is consistent with the Supreme Court's instruction on allowing the market to control the sale of an equity interest in a chapter 11 debtor. The Supreme Court stated in <u>Bank of America National Trust and Savings Association v. 203 North LaSalle Street Partnership</u>, 526 U.S. 434, 458, 119 S. Ct. 1411, 1424 (1999), "a market

---

[1] The court notes that some confusion occurred in the aftermath of the auction. Rialto's attorney bid on behalf of the Rialto subsidiary, but it was not clear until after the auction was complete that the attorney was bidding for a Rialto subsidiary. The attorney quickly brought this confusion to the attention of the court after the auction.

test would require an opportunity to offer competing plans or would be satisfied by a right to bid for the same interest sought by old equity[.]" While the Supreme Court did not rule on which method was preferred, this jurisdiction permits interested parties to hold an equity auction after confirmation of the plan. See In re Graham & Currie Well Drilling Co., Inc., 2011 WL 5909632 (Bankr. E.D.N.C. 2011).

The question then becomes what does the highest bidder acquire after the auction. Here, the purchase includes the debtor's obligations under the confirmed plan. The highest bidder in an equity auction is required to consummate the plan. See In re Bjolmes Realty Trust, 134 B.R. 1000, 1011 (Bankr. D. Mass. 1991) ("In order that the reorganization may be completed, I will require that the winning bidder cause the Debtor to consummate the Chapter 11 plan."). Mr. Richardson expressed that he may no longer want to pledge a lien on the unencumbered real property to Rialto. If that is the case, the court will find that the debtor's plan is no longer feasible and will lift the automatic stay.

Based on the foregoing, the debtor has until 5:00 p.m. on January 30, 2012, to inform the court on whether Mr. Richardson will pledge the real property to Rialto or not. If the lien exists, the plan will go forward as confirmed on January 20, 2012. The debtor will be required to consummate the confirmed plan including the payment of attorney fees under the priority claims. If Mr. Richardson does not pledge the property, the court will find that the plan is no longer feasible and will lift the automatic stay.

**END OF DOCUMENT**